FILED

2016 SEP 23 PM 2: 52

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARMEN CALDWELL,

Plaintiff,

CASE NO.: 6:16-cv-1676-ORL-40GJK

-VS-

NAVIENT SOLUTIONS, INC. and
STUDENT ASSISTANCE CORPORATION,

Defendants.
_____/

## COMPLAINT

COMES NOW Plaintiff, Carmen Caldwell, by and through the undersigned counsel, and sues Defendants, Navient Solutions, Inc. ("NSI") and Student Assistance Corporation ("SAC"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like NSI and SAC from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC,* -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

I

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.  According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.  This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.  Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.  Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Brevard County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Brevard County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, NSI, is a corporation which was formed in Delaware with its principal place of business located at 2001 Edmund Halley Drive, Reston, Virginia 20191 and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

14. Defendant, SAC, is a corporation with its principal place of business in Delaware, wherein its registered agent is Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

15. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

16. NSI is a "creditor" as defined in Florida Statute §559.55(5)

17. NSI and SAC called Plaintiff on Plaintiff's cellular telephone approximately three hundred (300) times since 2012, in an attempt to collect a debt.

18. NSI and SAC attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

19. Upon information and belief, some or all of the calls the Defendants made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and she received prerecorded messages from NSI and SAC.

20. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (321) ***-1526, and was the called party and recipient of Defendants' calls.

21. Beginning on or about January 1, 2012, NSI and SAC began bombarding Plaintiff's cellular telephone (321) ***-1526 in an attempt to collect/service on a student loan.

22. Shortly after the calls began, on multiple occasions Plaintiff would answer and speak to agents of NSI and SAC and inform them that she wished for the calls to stop, however the calls continued.

23. On or about April 2016, Plaintiff was in the hospital recovering from surgery and received another call from NSI which she answered and spoke to an agent known only as "Lorenzo."

24. Plaintiff explained to Lorenzo during the April 2016 conversation that she was unemployed, currently in the hospital and to please stop calling her.

25. Despite her clear and unequivocal revocation to NSI that she no longer wished to receive calls, NSI continued to bombard her cellular telephone with automated calls.

26. On August 16, 2016 at 9:49 AM, Plaintiff answered another call from NSI and this time spoke to an agent known only as "Tasha Dick." Plaintiff begged Tasha to stop the calls, that she had recently had surgery and was still trying to recuperate.

27. Despite her clear and unequivocal revocation to NSI that she no longer wished to receive calls, NSI continues to bombard her cellular telephone with automated calls as of the filing of this Complaint.

28. On August 25, 2016, Plaintiff answered another call from SAC and spoke to an unknown female agent and informed said agent that she wants SAC to stop calling her.

29. Despite her clear and unequivocal revocation to SAC that she no longer wished to receive calls, SAC continues to bombard her cellular telephone with automated calls as of the filing of this Complaint.

30. Due to the tremendous amount of calls Plaintiff received from NSI and SAC she was not able to properly catalogue each and every calls, however attached hereto as **Exhibit 1** is a log of some of the automated calls Plaintiff received to her cellular telephone from NSI and SAC.

31. SAC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

32. NSI has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

33. SAC has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or SAC, to remove the number.

34. NSI has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or NSI, to remove the number.

35. SAC'S corporate policy is structured so as to continue to call individuals like Plaintiff; despite these individuals explaining to SAC they wish for the calls to stop.

36. NSI'S corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to NSI they wish for the calls to stop.

37. SAC has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

38. NSI has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

39. SAC has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

40. NSI has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

41. SAC has had numerous complaints from consumers across the country against it asking to not be called; however, SAC continues to call the consumers.

42. NSI has had numerous complaints from consumers across the country against it asking to not be called; however, NSI continues to call the consumers.

43. SAC'S corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

44. NSI'S corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

45. SAC has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

46. NSI has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

47. Not a single call placed by SAC to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

48. Not a single call placed by NSI to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

49. SAC willfully and/or knowingly violated the TCPA with respect to Plaintiff.

50. NSI willfully and/or knowingly violated the TCPA with respect to Plaintiff.

51. From each and every call placed without consent by NSI and SAC to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

52. From each and every call without express consent placed by NSI and SAC to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from NSI and SAC'S calls.

53. From each and every call placed without express consent by NSI and SAC to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of

Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

54. Each and every call placed without express consent by NSI and SAC to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

55. Each and every call placed without express consent by NSI and SAC to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

56. Each and every call placed without express consent by NSI and SAC to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

57. Each and every call placed without express consent by NSI and SAC to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

58. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, aggravation and trouble sleeping which further impeded her time trying to recuperate after surgery.

## COUNT I
### (Violation of the TCPA)
### As to NSI

59. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-eight (58) as if fully set forth herein.

60. NSI willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified NSI that she wished for the calls to stop.

61. NSI repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NSI for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the TCPA)
### As to SAC

62. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-eight (58) as if fully set forth herein.

63. SAC willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SAC that she wished for the calls to stop.

64. SAC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SAC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FCCPA)
### As to NSI

65. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-eight (58) as if fully set forth herein

66. At all times relevant to this action NSI is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

67. NSI has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

68. NSI has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

69. NSI'S actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NSI for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

_____
Octavio "Tav" Gómez, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #: 0338620
Attorney for Plaintiff